**BAILEY, County Treasurer, et al. v. MEGAN.**

No. 11242.

Circuit Court of Appeals, Eighth Circuit.
April 6, 1939.

Byron S. Payne, of Pierre, S. D. (Clair Roddewig and Windsor Doherty, both of Winner, S. D., on the brief), for appellants.

Irwin A. Churchill, of Huron, S. D., and Nelson Trottman, of Chicago, Ill. (Lewis Benson, of Huron, S. D., and William T. Faricy, of Chicago, Ill., on the brief), for appellee.

Before SANBORN, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This is a suit brought by the appellee, trustee in reorganization proceedings of

the property of the Chicago and North Western Railway Company, against the appellants, members of the State Board of Equalization of South Dakota and the Treasurers of thirty-four South Dakota Counties in which portions of the lines of the Railway Company are located, to enjoin the collection of 50% of the 1935 taxes upon its railroad properties in each of those counties. The assessed value of all of the operating property of the Railway Company in South Dakota for the year in suit was $23,275,000. One-half of the total tax upon it was $312,829.26, which the appellee paid. His claim is that the taxes assessed were based upon a valuation which was so excessive, arbitrary and discriminatory as to violate the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, U.S.C.A. Issues were framed; the case was tried; and the court filed findings of fact and conclusions of law resolving all issues against the appellants. From the decree granting an injunction against the collection of the unpaid one-half of the taxes, this appeal was taken.

The Constitution of South Dakota provides that the valuation of property for purposes of taxation shall never exceed its actual value. Art. 11, Sec. 2. A law of the State provides that all property shall be assessed at its true and full value in money. Revised Code, S.D.1919, Sec. 6700, Compiled Laws, S.D.1929, Sec. 6700.

It is not necessary to describe the statutory method for the assessment of railroad property in the State. No question of procedure is involved. In 1935 the appellee furnished to the Director of Taxation of the State the required reports, statements and returns and an estimate showing that the value of the operating property of the Railway Company in the state of South Dakota was $8,548,694. On July 7, 1935, the Director of Taxation assessed the property at $23,400,000. A hearing upon the correctness of the assessment was had on July 17, 1935, before the State Board of Equalization. After the hearing, the Board of Railroad Commissioners, at the request of the Board of Equalization, furnished data with respect to the value of the property of the Railway Company in South Dakota together with a suggested formula for determining such value, the use of which produced a figure of $27,148,892.[1] On August 19, 1935, the Board of Equalization finally fixed the assessed value at $23,275,000. This was almost three times the amount of the appellee's estimate of the value of the South Dakota property of the Railway Company, and twice the figure which he contended could, by any reasonable stretch of a sound discretion on the part of the taxing authorities, be regarded as the value of the property.

There seems to be no very serious controversy as to the applicable rules of law[2], and little dispute as to the facts and figures

[1] "Chicago and North Western Railway Company

| | System | State | % State is of System | |
|---|---|---|---|---|
| Valuation | $ 647,245,087 | $ 43,793,657 | 6.766 | |
| Traffic Units | 5,559,524,655 | 248,167,002 | 4.464 | 11.230 |
| Average of Two | | | | 5.615 |
| Investment in Road & Equipment | 562,284,575 | .05615 | 31,572,279 | |
| 5 Year Average Value Stocks & Bonds | 240,821,316 | | | |
| Net Earnings Capitalized at 6% | 121,205,470 | | | |
| | 362,026,786 | | | |
| Average | 181,013,398 | .05615 | 10,163,902 | |
| Present Physical Value of Property in S. D. | | | 39,710,495 | |
| Investment | | | 31,572,279 | |
| Stocks, Bonds & Net Earnings | | | 10,163,902 | |
| Physical Value | | | 39,710,495 | |
| | | | 81,446,676 | |
| Average | | | 27,148,892 " | |

[2] The ruling cases are Great Northern R. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532; Rowley v. Chicago & N. W. R. Co., 293 U.S. 102, 55 S.Ct. 55, 79 L.Ed. 222, and Chicago & N. W. R. Co. v. Eveland, 8 Cir., 13 F.2d 442.

from which the value of that part of the system of the Railway Company which lies in South Dakota must be ascertained.

It is conceded that the only practical method for determining the value of that portion of an interstate railroad system lying within a state is to determine the value of the entire system and then to determine what percentage of that value is assignable to the state.

It is also conceded that the ascertainment of the value of railroad property is not governed by any definite formula, rule or method, and that consideration and weight may be given to all pertinent facts, estimates and forecasts in determining the value of such property; that overvaluation alone and mere errors of judgment on the part of the taxing authorities do not warrant injunction against taxes based on a challenged assessment; that "there must be something that in legal effect is the equivalent of intention or fraudulent purpose to overvalue the property and so to set at naught fundamental principles that safeguard the taxpayer's rights and property. Rowley v. Chicago & N. W. R. Co., 293 U.S. 102, 109–111, 55 S.Ct. 55, 79 L.Ed. 222;" Great Northern R. Co. v. Weeks, 297 U.S. 135, 139, 56 S.Ct. 426, 429, 80 L. Ed. 532; and that the action of the taxing authorities is surrounded by all of those presumptions which safeguard official action from unwarranted attack and place upon its assailant the burden of proving his assertions.

The appellee attempted to prove—and contends that he clearly and definitely did prove—that the taxing authorities knowingly and intentionally valued the property of the Railway Company in South Dakota for at least twice its actual value; while other property was not assessed at more than it was worth.

The method or formula used by the taxing authorities in arriving at their conclusion as to the 1935 value is not disclosed. This we do not regard as of controlling importance. If the result arrived at was clearly within the permissible limits of their discretion, the particular method used would seem unimportant. If the result was clearly wrong, the method used would not save it.

The appellee introduced evidence tending to show that the fair, reasonably accurate and most generally approved method of ascertaining system value is to take the value of the stocks and bonds of the railway company averaged over a period of five years and add to it the figure obtained by capitalizing at 6% the net income from operation for the same period, and average the two. This, in effect, gives a composite of the value at which investors have appraised the property during a period of years and the value upon which the earnings of the property during the same period would yield a rate of return which would be adequate to attract capital."

The stock and bond method of valuation, applied to the system of the Railway Company for the five years prior to 1935, produced a valuation of $240,821,316. The capitalized earnings method, applied during the same period, produced $121,205,470. The average of the two was $181,013,393.

The historical cost of the entire system was in excess of $618,000,000. The physical valuation of the entire system made by the Interstate Commerce Commission as of June 30, 1917, adjusted to December 31, 1934, less depreciation, was $572,611,294. (That part of the system lying in South Dakota was valued at $39,748,047, or 6.73% of the value of the entire system.) The face value of the bonds of the Railway Company at the end of 1934 was $345,769,100. Stocks and bonds together at face were $526,608,945, and current liabilities were $45,584,749.18.

The full and true value of the system, or of any part of it, is the amount which the owner would be entitled to receive as just compensation upon a taking by the State or the United States under the power of eminent domain—the money equivalent paid at the time of the taking. Great Northern Railway Co. v. Weeks, supra, 297 U.S. 135, 139, 56 S.Ct. 426, 80 L. Ed. 532. That equivalent is the market value of the property at the time of the taking. With respect to property not currently bought or sold, market value must be estimated and "may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236.

■ So in estimating the value of this railroad, or any part of it, the taxing authorities were entitled to take into account whatever considerations might reasonably be given weight by private parties in the fixing of a price in fair negotiations for the purchase and sale of the property. The appellants argue that in ascertaining system value some effect might reasonably be given to historical cost or to the Interstate Commerce Commission valuation (reproduction cost) brought down to date. The appellants now suggest that the latter be given 20% influence as against 80% influence to stock and bond value, thus producing a system value of $307,179,311.

■ No doubt, historical cost and reproduction cost less depreciation as determined by the Interstate Commerce Commission would be of help in determining value if one knew or could find out how much to discount such figures for permanent impairment of the value of the system due to highway or other forms of competition and other changed conditions which have apparently come to stay. If it were known how much of this railroad system, if nonexistent, would be reproduced, reproduction cost could intelligently be used as a basis of value. Without knowing what portions of the system actually justify their present-day existence, the cost of reproducing the entire system, or that portion of it in South Dakota, is not helpful in estimating value. The District Court found that in South Dakota improved highways paralleled all lines of the Railway Company; that regular truck lines operated over those highways; that there was not a town of any substantial size in the State not served by trucks; and that the business of the Railway Company in South Dakota and elsewhere was seriously and permanently affected adversely by competition of other forms of transportation and by constantly increasing costs of labor and taxes. The District Court further found that, prior to the development of highway competition and until about 1916, the "physical valuation" of the system closely corresponded with its actual value because the Railway Company could earn a fair return upon such "physical valuation", but that the disparity between cost and earning power had become so great by 1935 that book value and physical value furnished no standard of actual value. In our opinion, the evidence abundantly sustains those findings. It must be the present and potential ability of this property to earn in competition with other existing forms of transportation which is determinative of its value. An estimate of value in excess of the amount upon which, it can honestly be believed, the property is capable of earning an acceptable rate of return, cannot be sustained. Compare Great Northern Railway Co. v. Weeks, supra, 297 U.S. page 151, 56 S.Ct. 426, 80 L.Ed. 532.

■ A computation of system value based upon average market price of stocks and bonds and a computation based upon a capitalization of net earnings reflect the effect, upon actual value, of obsolescence, of the competition of other means of transportation, and of all factors affecting earnings; but original cost and cost of reproduction do not reflect adverse economic factors, whether temporary or permanent. It is our opinion that the greatest value which could honestly be accorded to the system for the year 1935 was that produced by the stock and bond method of valuation averaged over the five-year period, or $240,821,316. It would, no doubt, be fairer to the appellee to take the average of the stock and bond valuation and the capitalized earnings valuation. There is, however, no constitutional requirement that the taxing authorities use any particular method, and, since the value of stocks and bonds was competent evidence, we think they were at liberty to adopt $240,821,316 as the maximum system value.

We shall next endeavor to determine from the evidence the maximum percentage which properly might be used in allocating to South Dakota the portion of system value assignable to that State. Again we are dealing with a variable.

"The problem of apportionment is a difficult one. It is impossible to formulate a rule generally applicable. Controlling conditions vary greatly from time to time. Allocations to be sufficiently accurate for practical purposes must be arrived at by the exercise of sound judgment based on facts that fairly reflect the relation between value of the system as a whole and value of the part within a state." Great Northern Railway Co. v. Weeks, 297 U. S. 135, 144, 56 S.Ct. 426, 430, 80 L.Ed. 532. The appellee in estimating the value of the property in South Dakota used a composite allocating factor composed of three "use factors": (1) the percentage which South Dakota traffic units (freight ton miles plus passenger ton

miles) bore to the system total; (2) the corresponding relation of the use of rolling stock (car miles and engine miles); and (3) the percentage which State gross operating revenue (assigned on a mileage basis) bore to the gross operating revenue of the system. For the five years ending with 1934, the first factor was 4.276%, the second 5.12%, the third 4.746%, and the average of the three was 4.714%.

The Railway Company in 1935 operated 8,441.27 miles of road, of which 1,264.15, or 14.98%, were in South Dakota. It had a total trackage of 13,299.33 miles, of which 1,460.32, or 10.768%, were in that State. According to the Interstate Commerce Commission valuation, the percentage of the value of the property in the State to that of the system is 6.73%. The Board of Railroad Commissioners of South Dakota suggested the use of an allocation factor of 5.615%, being the average of the percentages which State valuation bore to system valuation and which State traffic units bore to system traffic units. The appellants now contend for an allocation factor of 8.076%. They arrive at this figure by averaging the percentage which State all track miles bore to system all track miles (10.768%) with the reproduction cost factor of 6.73%. The fatal defect of this method is that it in no way reflects the use or the value of the use of the part of the railroad in South Dakota as compared with that of the entire system. The testimony is, and the court found, that the value per mile of road, and per mile of all track, in South Dakota is far less than the corresponding value per mile of the system as a whole, and that for that reason a mileage allocation factor is unreasonable, unreliable, arbitrary and unsound. It is also to be noted that the appellants' expert testified that in his opinion the most fair and reasonable allocation factor was proportionate amount of investment. That we assume is 6.73%.

 It is very apparent from the cases of Rowley v. Chicago & North Western Railway Co., 293 U.S. 102, 55 S.Ct. 55, 79 L.Ed. 222, and Great Northern Railway Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532, that there can be no definite rule established by the courts for the ascertainment of the maximum allocation factor which may be used by state authorities in apportioning the value of a railroad system. In the Rowley case, Wyoming, in computing an allocation factor, used the average of the three use factors and a main track mileage factor. Without the mileage factor, the allocation factor would have been 1.673%. With the mileage factor, it was 2.10%. The Supreme Court held that, since the portion of the railroad in Wyoming was clearly shown to be worth much less than the average value per mile of the system, an apportionment on the basis of mileage alone would be arbitrary, but it did not condemn as unlawful the method used by the state authorities. That does not necessarily mean that that method would be available to the taxing authorities here. Nevertheless, we think that some influence might reasonably have been given to relative mileage or relative cost of reproduction in selecting an allocation factor. If relative reproduction cost were used in conjunction with the three use factors, the allocation factor would be 5.218%; if relative all track mileage were used, the factor would be 6.2275%; and if relative main track mileage were used, the factor would be 7.2805%.

 If the taxing authorities, in estimating the value of the railroad in South Dakota, had used $240,821,316 as the system value and 6.2275% as the allocation factor, the result would have been $14,997,147.45. It is not improbable, as the District Court found, that 50% of the assessed value is all that the property of the Railway Company in South Dakota could honestly be considered to be worth in 1935. Nevertheless, we recognize the importance of according to the State authorities the broadest possible discretion in estimating value for purposes of taxation. What we have tried to ascertain is the very outside limit of their permissible discretion in valuing the property of the Railway Company. With that in mind and out of an abundance of caution, we have reached the conclusion that if the Board of Equalization had fixed the assessed value at a figure not in excess of 65% of $23,275,000 (the assessed value complained of), or $15,128,750, its assessment could have been sustained as not violative of the due process and equal protection clauses of the Fourteenth Amendment. We think that that figure would not have been so clearly arbitrary or so grossly excessive as to require judicial interference in support of constitutional right. There are some considerations shown by the record—such as the relatively greater proportion of long-

haul traffic originating and ending in the State, and the excessively abnormal period of drought and depression in South Dakota during the five years ending with 1934—which might conceivably have justified the belief that the future of the portion of the railroad in that State was not as dark as much of the statistical evidence indicated, and thus have sustained the use of an allocation factor sufficient to produce the figure last mentioned. This figure we regard as the highest which could be sustained under the evidence.

■ That the property of the Railway Company in South Dakota was knowingly and purposely overvalued is, we think, sufficiently demonstrated by that portion of the findings of the court below quoted in the margin.[3] It must be kept in mind that each year the taxing authorities had before them complete information as to values of securities, earnings, and all facts essential to an accurate estimate of the value of the property. It is not credible that for the years 1933, 1934 and 1935 the value of the railroad remained constant, while its earnings and security values were decreasing each year. The truth, of course, seems fairly obvious. The State needed the taxes. The taxing authorities held up the assessed values regardless of changing conditions. They "persistently disregarded known conditions essential to the just ascertainment of value." Great Northern Railway Co. v. Weeks, supra, 297 U.S. page 151, 56 S.Ct. 426, 434, 80 L. Ed. 532.

■ So far as the issue of discrimination is concerned, we think there is no occasion to disturb the findings of the District Court to the effect that discrimination existed. · The duty of the State authorities under the State laws was to assess property for not more than its full value. The presumption is that they obeyed the law. The evidence as to the relation of assessed value of farm lands to actual value did not compel a finding that farm lands were assessed for more than their true and full value. It indicated that there was little actual demand for farm lands in South Dakota and that the market value of those lands was largely a matter of opinion. It is a fair assumption, however, that the taxing authorities did not overassess the farms in the State.

It is our conclusion that the decree should have enjoined the collection of 35% of the taxes levied, instead of 50%. As so modified, the decree is affirmed. No costs will be taxed in favor of either of the parties as against the other in this Court.

---

[3] "The value of said railway system as measured by the market values of its securities (with due allowance for non-operating assets) as of December 31 of each of the five years from 1930 to 1934, inclusive, averaged over the five years immediately preceding each of said years, was as follows:

| | |
|---|---|
| 1930 | $385,800,085 |
| 1931 | 372,720,400 |
| 1932 | 318,867,425 |
| 1933 | 277,692,952 |
| 1934 | 240,821,316 |

"The corresponding five-year average of capitalized net income for said years was as follows:

| | |
|---|---|
| 1930 | $364,771,720 |
| 1931 | 311,361,709 |
| 1932 | 248,578,851 |
| 1933 | 191,265,621 |
| 1934 | 121,205,470 |

"For the same five years the system value of said system determined by said two evidences of value, namely, the market value of stocks and bonds, and capitalized net earnings, averaged as aforesaid, and allocated to the State of South Dakota, on the basis of said three 'use factors,' as aforesaid, was as follows:

| | |
|---|---|
| 1930 | $16,738,083 |
| 1931 | 15,518,007 |
| 1932 | 12,930,978 |
| 1933 | 10,673,546 |
| 1934 | 8,548,694 |

"In years previous to 1935, the Chicago and North Western Railway Company made in each year to the said taxing authorities a presentation, similar to that made in 1935, and wherein like data was submitted, of facts bearing upon the value of its property in South Dakota for each such year.

"The assessments made in each year following each of said years from 1930 to 1934 were as follows:

| | |
|---|---|
| 1931 | $31,360,000 |
| 1932 | 27,553,000 |
| 1933 | 23,400,000 |
| 1934 | 23,300,000 |
| 1935 | 23,275,000 |

(being the assessments involved herein)."