Estate of John E. Gilson, Deceased, George I. Gilson, Jessie F. Gilson, and First Wisconsin Trust Company, Trustees, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 105366. Promulgated August 13, 1942.

*Kneeland A. Godfrey, Esq.*, for the petitioners.
*Jonas M. Smith, Esq.*, for the respondent.

532

OPINION.

ARNOLD: Section 302 (c) of the Revenue Act of 1926 as amended [2] provides, so far as pertinent hereto, that the value of a decedent's gross estate:

* * * shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—(c) To the extent of any interest therein of which decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * death; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by decedent within two years prior to his death * * *, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

If the transfers made by decedent on December 31, 1936, and on August 4, 1937, were gifts in whole or in part, then the statute sets up a presumption that these gifts were made in contemplation of death, as decedent died within nine months of the first gifts. The burden rests upon the petitioners to rebut the statutory presumption and to overcome respondent's determination. No question is presented as to the values included in the gross estate as a result of the transfers. The only question is whether such transfers were made in contemplation of death.

---

[2] Amended by Joint Resolution of March 3, 1931, Public No. 131, 71st Cong., and as further amended by section 803 (c), Revenue Act of 1932.

Whether gifts are made in contemplation of death is primarily a question of fact. In determining the ultimate fact it is necessary to carefully scrutinize the circumstances of each case in order to detect decedent's dominant motive, as "the test, despite varying circumstances, is always to be found in motive." *United States* v. *Wells*, 293 U. S. 102. In the course of the cited opinion the Supreme Court defined the statutory words "in contemplation of death" as meaning "that the thought of death is the impelling cause of the transfer" and stated that "the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death 'is near at hand'. " The Supreme Court reversed the rule laid down by the Court of Claims that there be a condition creating a reasonable fear that death was *near at hand*, and that such reasonable fear or apprehension must be the only cause of transfer, by stating that "It is sufficient if contemplation of death be the inducing cause of the transfer whether or not death is believed to be near."

By their evidence petitioners have attempted to rebut the presumption of the statute and overcome respondent's determination by establishing that the gifts were motivated by thoughts of continued life and that the transfers were not testamentary dispositions influenced by the thought or fear that "the moment of inevitable surrender of ownership" was near at hand, but were transfers to aid and assist his family, to give them a present income, and to more closely align the donees with the business. Finally, it is urged that the sales of August 4, 1937, were for an adequate and full consideration and no gifts resulted.

After carefully weighing and scrutinizing the facts adduced, we are convinced that neither the statutory presumption nor the burden of proof as to respondent's determination has been overcome. All the witnesses agreed that decedent was a highly intelligent man. The surgeon testified that decedent knew he was suffering from cancer in 1932, that he was desperate, and that he "thought everything was over." Decedent was well aware of the malignant nature of his trouble and that the operation then to be performed was serious and extensive, with the chances of recovery against him. It does not appear whether he knew the percentages against the success of the operation or not, but the surgeon testified that one operation in five was successful if the case was obtained early enough to effect a cure. The testimony shows that the cancer "was torturing him", and the only relief available was an operation, the chance of success of which was wholly problematical. He knew the operation offered no guarantee against a recurrence of the cancer cells elsewhere in his body, but he took this chance to prolong his life.

The testimony of the witnesses establishes that decedent had the possibilities of a recurrence of his condition on his mind. Had he

sought to forget his cancerous condition, no chance was afforded him, as the aftereffects of the colostomy constituted a daily reminder. That the possibility of a recurrence was ever before him is shown by the testimony of the two doctors, the son, the widow, and the attorney, with each of whom he discussed the matter. Neither doctor assured decedent that the passage of three or five years without a recurrence would constitute a guarantee against cancer, but only that he would be "reasonably safe" or "pretty safe." The surgeon testified specifically that most patients who know they are operated on for cancer feel that there will be a recurrence, and in his opinion decedent thought the same thing.

Decedent, as an intelligent man, must have known that a malignant affliction, such as he knew he had when first operated on and of which the colostomy was thereafter a daily reminder, would inevitably prove fatal unless completely eradicated. We must, therefore, examine his actions under these circumstances for a clue to his predominant motive in making the gifts. It is significant that decedent made the first transfers only after ascertaining that another operation was necessary. Informed on or about December 18, 1936, of the impending operation, he immediately incorporated his business for the purpose, *inter alia*, of making the gifts of December 31, 1936, since it would be impracticable to give undivided interests in a sole proprietorship. Such hasty action becomes doubly significant in view of decedent's complete despair at the time of the first operation, his obvious concern about his condition thereafter, and the possibility of a recurrence. While it may be true that the transfers were partly motivated by a desire to aid and assist his family and to more closely align the donees with the business, the question is not whether decedent had these motives as well, but what his predominant motive was. *United States* v. *Wells, supra.* His continued interest in local affairs and in his business after he learned he was afflicted with cancer was but natural to anyone who had led an active life such as decedent had led. It tended to distract his mind from his physical condition. The respondent has determined that decedent's predominant motive in making the gifts was contemplation of death. The evidence does not overcome this determination.

It is of interest that the gifts made on December 31, 1936, were substantially in accord with the testamentary dispositions made by his last will and testament, namely, the sons to acquire the business and the wife and daughters to be otherwise provided for. It is established that the decedent was not given to complaining, as his widow testified that she didn't know of his pain and suffering in 1932 until a few days before he went to the doctor. If the pain he suffered prior to March 16, 1932, brought no words of complaint from him until shortly before the operation, it is quite unlikely that carcinoma of the liver, which is

much less painful, according to the testimony of the surgeon, would bring forth any complaints, particularly in view of his knowledge that he had cancer in 1932. Obviously decedent was cognizant that his condition was growing more precarious at and prior to the transfers of August 4, 1937, as his physical condition was such that the colloidal gold treatment had to be discontinued. Considering all of the circumstances, we believe that decedent was motivated by thoughts of death and the necessity of putting his house in order before the moment of inevitable surrender. We, therefore, hold that the gifts here involved were made in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926, as amended. *Estate of Martin Luscomb*, 9 B. T. A. 1070; affd., 30 Fed. (2d) 818.

There remains the question of whether the transfers of August 4, 1937, were bona fide sales for an adequate and full consideration in money or money's worth. Petitioners defend the sales upon the ground that the books indicated a book value of $143 per share on July 31, 1937, before taxes, and, being stock in a closed corporation that was engaged in a hazardous business, decedent could not have realized more than $100 per share in the open market. While agreeing that for *tax purposes* the stock had a value of $185 per share, petitioners deny that this establishes the selling price thereof, citing *Estate of Samuel P. Schwing*, 3 B. T. A. 697, and contend that $100 a share was an adequate consideration for the stock.

A major difficulty with petitioners' argument is that decedent acted for both vendor and vendee in arranging for the sales to vendees who were the natural objects of his bounty. The widow testified that decedent took the entire initiative in selling and transferring the stock and all she had to do was sign the notes. She stated she wasn't even consulted about the sale, but merely acquiesced in the purchase. Certainly, there was no *bona fide* sale for an adequate and full consideration within the meaning of the statute under these circumstances. We are, therefore, of the opinion that the excess of the agreed value over the selling price constituted a gift presumably made in contemplation of death, and that the evidence adduced supports the statutory presumption.

The *Schwing* case, *supra*, was decided upon its own peculiar facts and is not controlling herein.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

Black, dissenting: I dissent from that part of the majority opinion which holds that the gifts of 150 shares of stock in the J. E. Gilson Co. which decedent made on December 31, 1936, to his wife and two

sons and his secretary were made in contemplation of death. The Board's findings of fact as to these gifts state, among other things, as follows:

In making these gifts decedent stated that the members of his family and Miss Kraus, who had worked with him for many years, were deserving of some interest in the business. He further expressed the hope that a financial interest in the business would result in a greater personal interest on the part of the donees. At the time these gifts were made decedent gave no indication that he was concerned with the thoughts of death.

It seems to me that the above findings of fact show that the transfers in question were related to purposes associated with life, rather than with the distribution of property in contemplation of death. Cf. *United States* v. *Wells*, 283 U. S. 102.

I think the decision as to these particular gifts should be that they were not made in contemplation of death and that so much of the deficiency in estate tax as is due to the inclusion of their value in decedent's estate should be expunged.

VAN FOSSAN, LEECH, MELLOTT, and TYSON agree with this dissent.