Harry B. HELMSLEY, Plaintiff-Appellant,

v.

CITY OF DETROIT, Charles N. Williams, County of Wayne and Louis H. Funk, Defendants-Appellees.

No. 16956.

United States Court of Appeals
Sixth Circuit.

June 29, 1967.

Henry J. Freud, Detroit, Mich., for appellant, James P. Mattimoe, Detroit, Mich., on brief.

Julius C. Pliskow, Detroit, Mich., for City of Detroit, Robert Reese, Corp. Counsel, Irving S. Wolfe, Detroit, Mich., on brief.

William F. Koney, Detroit, Mich., for County of Wayne, Samuel H. Olsen, Pros. Atty., Aloysius J. Suchy, William F. Koney, Asst. Pros. Attys., Detroit, Mich., on brief.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and NEESE, District Judge.*

WEICK, Chief Judge.

Plaintiff appeals from the District Court's judgment of no cause of action after the trial of four consolidated suits for recovery of real property taxes paid under protest to the City of Detroit, Michigan, and to the County of Wayne.

The dispute revolves around the alleged illegal assessment of ad valorem taxes on real property owned by the plaintiff in Detroit during the years 1960 through 1963. An earlier suit for declaratory judgment in the Federal Courts was dismissed under the authority of the Johnson Act, 28 U.S.C. § 1341 (1962) because of the availability of an adequate state remedy. Helmsley v. City of Detroit, 320 F.2d 476 (6th Cir. 1963). Plaintiff has since paid the taxes under protest, and the Federal Courts may now entertain his action for refund under the diversity jurisdiction since he is a citizen of New York [1].

The property subject to the disputed tax was originally constructed as a heavy industrial plant, consisting of several buildings with a total floor area exceeding 2,000,000 square feet. Most of the buildings were built before 1929 and were used for the production of automobile bodies until 1954. From that time on, the Murray Corporation, the previous owner, discontinued manufacturing operations and attempted to sell the plant, meanwhile using the buildings for its own warehousing and also as commercial rental property which it leased to various tenants.

On January 12, 1960, plaintiff purchased the plant from Murray Corporation for $500,000, and devoted it to use as income property subdivided for light manufacturing and warehousing. During the period when the disputed taxes were assessed, the property was never fully rented and plaintiff sustained large operating losses.

In 1960, following an appeal from the assessment levied by the Detroit Board of Assessors, the State Tax Commission of Michigan fixed the valuation of plaintiff's Detroit property at $3,532,350. This figure was the result of the application of a formula based on the reproduction cost of the buildings with allowances for depreciation, obsolescence and rental vacancies. This same assessment was carried forward for the year 1961.

However, in 1962, following a similar appeal from the Board of Assessors' determination, the State Tax Commission reduced the valuation to $2,427,710. That figure was continued for 1963 as well. (It should be noted, however, that because the general "equalized" level of assessments in Michigan is 50% of "cash value", these figures represent only about one-half of the actual values as found by the Tax Commission.)

The Michigan Constitution of 1908, which was still in force at the times relevant herein, prescribed that ad valorem property taxes must be uniform and at cash value. Mich.Const. Art. X, §§ 3, 7 (1908). The present Constitution provides for a similar rule of assessment; see Mich.Const. Art. IX, § 3 (1963). The Michigan Legislature has defined "cash value" in essentially the same language since 1882:

"The words 'cash value', whenever used in this act, shall be held to mean the usual selling price at the place where the property to which the term is applied shall be at the time of assessment, being the price which could

---

* Honorable C. G. Neese, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

1. In his pleadings, plaintiff vaguely alleged a federal question under the Constitution, but this was never pursued in the arguments, either at the trial level or on appeal here.

be obtained therefor at private sale, not at forced or auction sale." Comp. Laws 1948 § 211.27, M.S.A. § 7.27.

It is plaintiff's contention that the statutory language compels the assessing officials to utilize the "market" approach to valuation, rather than the modified reproduction cost method which has been applied. He does not argue that he has been subjected to a different method than that used in other assessments in Detroit, but insists that his assessment is many times in excess of the cash value of the property and that it transgresses reasonable limits.

■ While the terms of the statute might well be interpreted as plaintiff urges if we were free to treat the question afresh, it is a first principle in cases such as this that the Federal Courts are bound by the law of Michigan and the decisions of its courts construing it. That rule preceded the decision in Erie R. R. Co. v. Tompkins, 304 U.S. 64 58 S.Ct. 817, 82 L.Ed. 1188 (1938), since it has never been seriously questioned that the decisions of State Courts on matters of state statutory interpretation and local tax matters must guide the federal judiciary. Swift v. Tyson, 41 U.S. (16 Pet.) 1, 18, 10 L.Ed. 865 (1842); Dawson v. Kentucky Distilleries Co., 255 U. S. 288, 292, 41 S.Ct. 272, 65 L.Ed. 638 (1921). Thus we must turn to the Michigan cases to determine the legislative requirements concerning the measurement of "cash value."

In Cleveland-Cliffs Iron Co. v. Township of Republic, 196 Mich. 189, 163 N. W. 90 (1917), the Michigan Supreme Court established its fundamental approach to the valuation law, stating:

"The legislative statement of the meaning of cash value, which is really a statement of tests to be applied in determining cash value, is not exclusive or inclusive." (196 Mich. at 201, 163 N.W. at 94)

This interpretation has been the touchstone of review in cases where determination of "the usual selling price" is not practicable because the property is rarely or never sold and no market exists for it. In the *Cleveland-Cliffs* case the Court had first noted:

" 'The usual selling price' at the place where the property is when assessed is manifestly no guide to an assessor in a case where the property is singular in character and is never sold, or sold once in a decade." (196 Mich. at 200, 163 N.W. at 93)

■ Applying these basic principles, the Michigan Courts have long endorsed the use of an adjusted reproduction cost formula in the assessment of properties which have an inadequate or distorted market. Where property is singular in character and sales are infrequent, the reproduction cost method is approved so long as the result is fair and discrimination is absent. Twenty-Two Charlotte, Inc. v. City of Detroit, 294 Mich. 275, 283, 285, 293 N.W. 647 (1940); Moran v. Grosse Pointe Twp., 317 Mich. 248, 26 N.W.2d 763 (1947).

In a case involving an industrial plant similar to plaintiff's in almost all respects, the Michigan Court upheld the Tax Commission's use of reproduction cost despite an assessment of almost twice that amount urged by the taxpayer derived from other methods of calculation. Kingsford Chem. Co. v. City of Kingsford, 347 Mich. 91, 78 N.W.2d 587 (1956).

In one of the few cases where a reproduction cost determination was upset by the Courts, Helin v. Grosse Pointe Twp., 329 Mich. 396, 45 N.W.2d 338 (1951), the crucial factor was the Court's decision that a prior sale of the property by the state after it had acquired a tax title, was binding on the assessing authorities as to cash value.

That unusual circumstance has not intervened in the present case. Further, it is important to note that the rule in *Helin* was immediately changed by the legislature by amending the definition of cash value. This action was an important confirmation of the course which the Michigan Courts had followed in in-

terpreting the statute in cases involving property with a sparse sales history.

■■ In the absence of fraud or discrimination, the actions of the State Tax Commission are final and the courts will not dispute its judgment. Naph–Sol Ref. Co. v. Township of Muskegon, 346 Mich. 16, 77 N.W.2d 255 (1956); Moran v. Grosse Pointe Twp., supra; S. S. Kresge Co. v. City of Detroit, 276 Mich. 565, 268 N.W. 740, 107 A.L.R. 1258 (1936). Necessarily the discretionary power of the Commission extends to a reasonable choice of methodology, especially in such a judgmental science as real estate valuation. See Pantlind Hotel Co. v. Michigan State Tax Comm'n, 3 Mich.App. 170, 141 N.W.2d 699, 701 (1966).

■ Since the taxpayer raised no question of discrimination in regard to the mode of assessment, admitting that the reproduction cost formula was applied to assess similar properties, the remaining question is whether the Tax Commission's valuation was so unreasonable as to amount to fraud. It is not enough that a mere overvaluation or error of judgment was committed; Naph-Sol Ref. Co. v. Township of Muskegon, supra.

On this question the District Judge heard the testimony of plaintiff's real estate experts who based their valuations entirely on the market approach, while defendants' experts valued the property on the reproduction cost method.

The Court found that the property was singular in character and that the best and most efficient use of it was not being made; that the sale of the property to plaintiff was the only sale of it in forty years, and was made only "after continued efforts to sell and sell quickly"; and that under the circumstances of the case the market approach would not result in the ascertainment of the true value of the property.

The Court further found that the reproduction cost method of valuation offered a realistic standard to the assessors in arriving at an assessment value, and that the standard so used was not arbitrary, unreasonable or fraudulent.

Further, a review of the record indicates that plaintiff's primary objection was to the use of the reproduction method, and that none of his evidence offered in the District Court was aimed at showing a misuse or abuse of its principles. Indeed, plaintiff offered no evidence on reproduction cost valuation and did not even cross-examine any of the defendants' expert witnesses. The dissent, while agreeing that plaintiff was wrong in attacking the principle of reproduction cost valuation, likewise does not point out a single error in its application to the property in question.

In the absence of any evidence that the State Tax Commission had committed errors in its use of the reproduction cost valuation, or had discriminated against the plaintiff, we cannot say that the District Judge was wrong in accepting the valuations of defendants' experts and rejecting those of plaintiff's experts. Our review of the record convinces us that there was substantial evidence to support the findings of fact of the District Judge and they are not clearly erroneous. Fed.R.Civ.P. 52(a).

Thus we have here a presumption in favor of the validity of the assessment aided by findings of fact of the District Judge adopted in a de novo hearing [2] and upon consideration of all of the evidence.

Once it is established that the State Tax Commission had the right to choose the reproduction cost method, most of

---

**2.** It is important to point out that the proceeding in the District Court was actually the second de novo hearing in this case. Under Michigan law, plaintiff was afforded a full evidentiary hearing before the State Tax Commission upon appeal from the findings of the Local Board of Assessors. While the Tax Commission made some changes in the initial assessment, it was in fundamental agreement concerning the issues in dispute here.

plaintiff's case simply missed the mark. Moreover, the use of a significant adjustment for economic obsolescence did much to bridge any theoretical gap between the market approach and the reconstruction method. The increase in this obsolescence factor from 45% in 1960 to 65% in 1962 was apparently responsible for most of the decrease in valuation upon which the dissent lays so much emphasis. Far from being an admission of past errors in the overall valuation, as the dissent implies, this change was the continuation of an increasing trend in regard to this property which dated back at least to 1954 when only a 10% factor was used. (In addition, it should be pointed out that the decrease in the 1962 valuation was inevitably affected by the demolition of two buildings on the property after the 1960–61 valuation.)

While there may exist a genuine, even intense, difference of opinion between the parties as to the value of the property for tax purposes, it is not the role of the courts to set aside the good faith, reasoned judgment of the state taxing authorities in any but the most obvious cases of error. This is not the situation in the present case, considering the tax law in the light of the state decisions.

The burden of proof to establish fraud on the part of the State Tax Commission was upon the plaintiff. The District Court, in considering the evidence, found that no fraud had been proven. We are of the opinion that this finding was correct.

Affirmed.

NEESE, District Judge (dissenting).

The profound deference I hold for the more experienced judgments of my learned brethren must not dissuade me from the performance of my sworn duty in dissenting respectfully from the conclusion reached by the majority herein. I cannot avoid the conclusion that the valuations on which the assessments of the plaintiff's property were based in 1960, 1961, 1962 and 1963 were so palpably unfair and wrong as to amount, in legal effect, to the equivalent of the intention or fraudulent purpose on the part of the defendants to overvalue this plaintiff's property and set at naught fundamental principles which safeguard the rights of a taxpayer and his property. Cf. Rowley v. Chicago, N. W. R. Co., 293 U.S. 102, 109–111, 55 S.Ct. 55, 79 L.Ed. 222 (1934); Great Northern R. Co. v. Weeks, 297 U.S. 135, 139, 56 S.Ct. 426, 80 L.Ed. 532 (1936).

The cold figures suggest to me that the taxing authorities themselves recognized eventually that the valuations at issue were unfair and clearly wrong. The various assessments set forth in the majority opinion reflect an adjustment on appeal to the State Tax Commission of Michigan of more than 31% between the valuations for the tax years 1961 and 1962. This represents a startling commentary on the overvaluation before adjustment on appeal. The final valuation for the tax year 1964 [1] amounted to only 45.6% of the initial valuation of this taxpayer's property, and the 1964 valuation was computed after the plaintiff had expended approximately $125,000 in enhancing its value with improvements. These considerations persuade me that the valuations prior to 1964 under "* * * a generally approved practical scheme of valuation [produced] fundamentally wrong results under the circumstances * * *" of this particular case. See Twenty-Two Charlotte, Inc. v. City of Detroit, 294 Mich. 275, 285, 293 N.W. 647 (1940).

While agreeing totally with the majority that Michigan law is applicable here, and that the employment by these taxing authorities of the reproduction-cost- less- depreciation- and- obsolescence method of valuation was not improper and was uniformly applied, this is not determinative. While "* * * [a] tax must be uniform to be good, [i]t is not

---

I. The 1964 valuation for this property was stated in oral argument before us without dispute to have been $1,610,200.

good simply because it is uniform * * * ", In re Harleigh, 299 Penn. 385, 149 A. 653, 655, and " * * * [i]f the result was clearly wrong, the method used [will] not save it.' * * * " Twenty-Two Charlotte, Inc. v. City of Detroit, supra, 249 Mich. at 286, 293 N.W. at 651, quoting from Bailey v. Megan, 102 F.2d 651, 654 [4] (C.C.A. 8, 1939).

I am in agreement further with the majority that, in the absence of fraud or discrimination, the actions of the State Tax Commission of Michigan are final and not to be disputed as to the exercise of judgment by the courts. (See cases cited in the majority opinion.) There is present here an overriding consideration, however.

We are adjured from on high to assume more responsibility for the reasonableness and fairness of such administrative decisions than some courts had assumed before 1951, to be influenced by the feeling that courts are not to abdicate their conventional judicial functions, and to discharge the responsibility imposed upon us by the Congress to keep such matters within reasonable bounds of reality. See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (headnote 8) (1951). According the Michigan taxing authorities' judgments due consideration, where, as here, the record demonstrates a reduction in valuation of realty of $1,922,150, roughly 55%, over a span of five years, when one-eighth of a million dollars in improvements have been added to the realty within that period, in my mind it is an abdication of our conventional judicial functions not to conclude that the earlier higher valuations must have been "clearly wrong".

As indicated, supra, the action of the defendants which I fault pertains to the result reached. This result passes muster on Michigan's qualification that discrimination be absent, while failing

to pass muster on the further qualification that the result also be fair. Twenty-Two Charlotte, Inc. v. City of Detroit, supra.

Entertaining this view of the matters at issue, I would reverse and remand, with no prejudice to a proper reassessment for the periods in issue, Helin v. Grosse Pointe Township, 329 Mich. 396, 408, 45 N.W.2d 338 (1951), on pain of future judgment by this Court for a full refund of the taxes paid under protest by the plaintiff.[2]

2. I think this may be preferrable to ordering a refund of the entire amount of the disputed taxes, when the plaintiff must then pay back a substantial proportion thereof following reassessment.