S. S. KRESGE CO *v.* CITY OF DETROIT.

1. TAXATION—ASSESSMENTS—COURTS—FRAUD—DISCRETION OF AS-
   SESSORS.
   Assessments of properties for purposes of taxation will not be disturbed by courts unless they are so at variance with undisputed facts as to be a fraud upon the taxpayer, notwithstanding courts might disagree with conclusions of assessing officers in the exercise of their discretionary power and adopt a different figure upon the same evidence.

2. SAME—STOCK OF FOREIGN CORPORATION—CASH VALUE—STAT-
   UTES—DETROIT CHARTER.
   Neither the general property tax law nor the charter of the city of Detroit prescribes a method for determining the true cash value of the corporate stock of a foreign corporation not bought and sold upon the open market (1 Comp. Laws 1929, § 3389 *et seq.*).

3. SAME—BOARD OF ASSESSORS.
   The board of assessors, in making a determination of a tax, acts in a *quasi*-judicial capacity and, while it is an administrative body, it cannot make an arbitrary ruling not warranted by the uncontroverted facts presented.

4. Same—Assessors—Evidence.

    Assessors are not required to abide by the facts presented by a
        taxpayer but may consider all pertinent facts, estimates and
        forecasts.

5. Same—Courts—Methods for Determining Values of Property.
    Courts may not set up methods for determining values of prop-
        erty for tax assessment purposes.

6. Same—Courts—Review.

    Courts cannot substitute their judgment as to the valuation of
        property for the judgment of duly constituted tax authorities
        unless assessments are shown clearly to transgress reasonable
        limits, mere overvaluation or error of judgment not amounting
        to fraud not being enough to warrant court interference.

7. Same—Assessment—Presumptions—Evidence—Judicial No-
    tice.

    An assessment for taxation on property is presumed to have been
        made on basis of actual value and validity may be tested upon
        consideration of facts established by the evidence and of
        those of which judicial notice may be taken.

8. Same—Corporations—Value of Stock.

    Value of corporate stock for purposes of taxation depends but
        in part upon the value of lands and buildings owned by it.

9. Same—Corporations—Value of Stock.

    Assessment of personal property tax of parent corporation de-
        termined by taking from corporate books value of foreign
        subsidiary corporation's total assets and deducting therefrom
        liabilities exclusive of capital stock and earned surplus and
        dividing balance by number of shares of stock *held,* proper
        method of determining value of such subsidiary's stock which
        had no market value.

Appeal from Wayne; Miller (Guy A.), J.   Sub-
mitted April 28, 1936.   (Docket No. 106, Calendar
No. 38,778.)   Decided September 2, 1936.

Assumpsit by S. S. Kresge Company, a Michigan
corporation, against City of Detroit, a municipal
corporation, and Charles L. Williams, its treasurer,
to recover taxes paid under protest.   Judgment for
defendants.   Plaintiff appeals.   Affirmed.

*Butzel, Eaman, Long, Gust & Bills,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *John H. Witherspoon,* Assistant Corporation Counsel, for defendants.

Bushnell, J.   Plaintiff sued to recover $22,191.30 of its personal property tax paid under protest in 1934.   Both sides moved for a summary judgment, plaintiff's motion was denied and defendant's granted.   Plaintiff appeals from the judgment entered for defendant.

S. S. Kresge Company is a Michigan corporation, with its principal office in the city of Detroit.   Its tax return of property assessable for taxation in 1934 at the main office amounted to $1,092,800, of which $100,000 was stated to be the value of  shares of stock "in any corporation organized under the laws of any other State or country."   This item of $100,000 was the value placed by the taxpayer upon the capital stock of S. S. Kresge Company, Limited, a corporation organized under the laws of the Dominion of Canada and conducting business in its provinces, which stock had no market value.   The Detroit board of assessors did not accept the taxpayer's valuation on the Canadian stock and increased it to $1,000,000.   With other adjustments·on the tax return, which are not contested, the portion to which protest was made amounts to a claimed excess valuation of $900,000.   An appeal was taken to the board of review and from it to the State tax commission, both of whom confirmed the assessment made by the city officials.   The amount contested is less than one-half of the total tax paid in 1934, which was $49,137.47.

In support of the claim of excess assessment, plaintiff shows that during 1928 and 1929, it ac-

quired 45 store properties in Canada, on 9 of which the buildings were used, 2 buildings were replaced and 30 new structures were erected, mainly between 1929 and 1930.

The cost of lands is shown to be $4,759,931.67 and buildings $2,939,327.37. The Canadian company's balance sheet as of December 31, 1933, carries the land at cost and buildings thereon at cost less depreciation $2,623,694.97. Testimony was offered (by affidavit) showing a fair value in 1934 as lands $3,200,000, buildings $2,153,000, total $5,353,000, or a loss of about $2,000,000. The Canadian company's net operating earnings from 1928 to 1933, inclusive, were $549,447.48 and carried as earned surplus. The balance sheet also shows an unpaid advance from the parent company (the Michigan corporation) of $7,419,913.11. No interest has been paid upon this indebtedness, except $7,670, in 1928, nor have any dividends been paid upon the Canadian capital stock which is carried on the books at a value of $500,000.

Plaintiff admits that the capital stock and accounts receivable of the Canadian company due the Michigan company are both taxable to plaintiff in Detroit, but says that since the deductible debits exceed the taxable credits, only the capital stock remains to bear the burden of taxation at its home office in Detroit.

Appellant says:

"The assessment in question is: (a) the result of intentional and purposeful action by the assessing officers, (b) based upon a fundamentally wrong method or principle, (c) arbitrary and capricious, (d) discriminatory and violative of uniformity, and (e) though not intended as a fraud, amounts to that and is in effect the equivalent of fraudulent purpose; and is therefore not in accordance with law

and violative of the rights of plaintiff taxpayer and should be set aside or disregarded.''

Appellee, city of Detroit, contends that the assessment of plaintiff's personal property is legal and proper in every respect; that courts do not have jurisdiction to determine the assessed valuation of property, and the method used by its officers is the uniform method used by the board of assessors in valuing stock that is not found upon the open market.

The affidavit of Kenneth J. McCarren, a member of the board of assessors, says in part:

''Deponent's examination of the balance sheet of the S. S. Kresge Company, Limited, of Canada, disclosed that such valuation was an arbitrary figure that was not substantiated by facts; that the assessed valuation of said shares of stock was determined by deducting the liabilities of said company exclusive of the capital stock and earned surplus, from the total assets of said company and then by dividing the figure thus obtained by the number of shares of stock, which fixed a value of said stock in a sum slightly in excess of $20 per share; that the gross assets amounted to a total of $10,472,719.14 and the liabilities exclusive of capital stock and earned surplus totaled $9,423,271.66, leaving net assets of $1,049,447.48, which divided by the 50,000 shares of stock, fixes the value of each share slightly in excess of $20. Deponent further states that the assessed value of said share of stock was therefore determined to be $1,000,000, which, together with the assessed value of the furniture, fixtures and merchandise, made a total assessed valuation in the sum of $1,992,800.''

The chairman of the board of assessors admitted the diminished value of the company's real estate holdings and stated in substance, according to one of plaintiff's affidavits:

"We are admitting all of this. We appreciate the value of this testimony as it shows the value of your assets, but you show in your balance sheet owing to the parent company, $7,419,913 and mortgages payable of $1,857,800. The only things we can take are the figures at that time as shown on your balance sheet. If we assume that the total assets of the Canadian company are worth $10,472,914, as shown on the balance sheet, and after deducting from that $9,423,271 covering credits owing the parent company, we return a value of $1,049,643 which should equal the value of the stock in land and buildings."

It might be noted that plaintiff in 1934 had 24 other places of business in the city of Detroit at which personal property was assessable for taxation, but none of which is involved in this action.

Appellant contends that book entries in other years do not determine present day values and that the assessment should be at the true cash value of the stock in 1934, which, in turn, depends upon the then actual value of lands and buildings.

Appellant relies largely, but not entirely, upon *In re Appeal of Hoskins Manfg. Co.,* 270 Mich. 592, and *Great Northern R. Co.* v. *Weeks,* 297 U. S. 135 (56 Sup. Ct. 426).

Appellee cites considerable authority for its position and urges that *Copper Range Co.* v. *Adams Township,* 208 Mich. 209, is controlling.

The trial judge filed a comprehensive written opinion containing a full discussion of fact and law. He summed up the contentions of the parties as follows:

"Defendant claims that plaintiff cannot go behind the balance sheet of the Canadian company. Plaintiff claims that it has the right to go behind that balance sheet and show the actual value of the properties owned by that company."

We concur in the court's resumé of the applicable law:

"It may be taken, I think, as the law of the State that assessments of properties for purposes of taxation will not be disturbed by the courts unless they are so at variance with undisputed facts as to be in the eyes of the law a fraud upon the rights of the taxpayer. The question here presented is whether the action of the assessing officers of the city of Detroit in fixing the value of this stock at $1,000,000 is so out of line with the unquestioned facts that it can be said to amount to a fraud upon the plaintiff company. The mere fact that the court might disagree with the conclusions of the assessing officers, or might determine that the figure adopted by them is different from the figure that would be adopted upon the same evidence by the court is not sufficient to warrant the court in interfering with their determination. Where there is a discretion which has been exercised in a manner that falls short of action that is fraudulent in the eyes of the law, that discretion will not be disturbed."

The corporate franchise tax in the *Hoskins Case, supra,* was set aside because of the inconsistent treatment by the taxing officers of entries upon the corporation's books. The approximate market values of investments owned by the Hoskins company were shown on the books, but they were ignored in favor of cost of investments. In short, the books were improperly interpreted and the facts of that case examined in the light of the applicable statute (2 Comp. Laws 1929, § 10143) made reversal compulsory.

Neither the general tax law * nor the charter of the city of Detroit prescribes a method for determining

---

* See 1 Comp. Laws 1929, § 3389 *et seq.*—Reporter.

the true cash value of the corporate stock of a foreign corporation not bought and sold upon the open market. The impracticability of the city assessors' appraising physical properties located in foreign countries is apparent.

"In making a determination of the tax, the board acts in a *quasi*-judicial capacity. While it is an administrative board, it must weigh the facts as presented and cannot make an arbitrary ruling not warranted by the uncontroverted facts presented." *National Bank of Detroit* v. *City of Detroit*, 272 Mich. 610, 615.

The assessors are not required to abide by the facts presented by a taxpayer and "Courts cannot substitute their judgment as to the valuation of property for the judgment of the duly constituted tax authorities." 4 Cooley on Taxation (4th Ed.), p. 3222.

Our attention has not been directed to authorities holding that courts may set up the methods for determining values and we apprehend that none can be found.

"In determining the amount of the assessment, the board was not bound by any formula, rule or method, but for guidance to right judgment it was free to consider all pertinent facts, estimates and forecasts and to give them such weight as reasonably they might be deemed to have. Courts decline to disturb assessments for taxation unless shown clearly to transgress reasonable limits. Overvaluation is not of itself sufficient to warrant injunction against any part of the taxes based on the challenged assessment; mere error of judgment is not enough; there must be something that in legal effect is the equivalent of intention or fraudulent purpose to overvalue the property and so to set at naught fundamental principles that safeguard the taxpayer's rights and property. *Rowley* v. *Railway*

*Co.,* 293 U. S. 102, 109–111 (55 Sup. Ct. 55). The assessment is presumed to have been made on the basis of actual value. Its validity must be tested upon consideration of the facts established by the evidence and of those of which judicial notice may be taken." *Great Northern R. Co.* v. *Weeks, supra.*

The taxpayer claims that "values in the places where the lands and buildings of said foreign corporations are located have from 1929 to 1934 followed the same general course as the assessing officers have found that values in the city of Detroit have followed during the same period of time. That the depression has been world wide and with effects similar in nature and course elsewhere is a matter of such general knowledge as to be the subject of judicial notice."

The value of corporate stock depends in part upon the value of lands and buildings owned by the corporation; these are some of the factors of value but there are many others.

It is not contended that the method used by the assessors in arriving at values was used in this particular instance and no other. Defendant says it used its usual method of determining the value of shares in a foreign corporation where there is no open market for the stock.

An examination of the recent opinion of the United States Supreme Court in *Great Northern R. Co.* v. *Weeks, supra,* indicates the distinction between the arbitrary valuation by the tax authorities of North Dakota, who ignored the taxpayer's records of earnings, values, etc. in that case and the assessing officers of the city of Detroit, who in this case accepted the results of the taxpayer's own bookkeeping system.

The court in the *Great Northern Case* held that:

"Unquestionably, the assessment was made in plain violation of established principles that govern property valuations."

We cannot arrive at this conclusion in the instant case. We find no evidence of an intentional violation of duty on the part of the assessing officers or such reckless disregard of a taxpayer's manifest rights as would reasonably lead to an inference of intentional inequality or of a clear adoption of a fundamentally wrong principle that would make the assessment void. *Copper Range Co.* v. *Adams Township, supra.* We are unable to say that the action of the assessing officers was either arbitrary or capricious. The result was neither discriminatory nor violative of the rule of uniformity.*

The appellant argues that the court erred when it permitted defendant to file a supplemental affidavit, which it claims states conclusions rather than facts. Plaintiff's rights were not jeopardized because the court granted it leave to file a counter affidavit; furthermore, the subsequent affidavits can be disregarded without affecting the result herein stated.

We are in accord with the conclusions reached by the trial judge who said:

"Upon the evidence presented to the board of assessors, their determination, that the stock of the Canadian company held by the plaintiff company was worth for taxation purposes $1,000,000, was not in point of law so arbitrary and unreasonable as to amount to a fraud."

The judgment is affirmed, with costs.

North, C. J., and Fead, Wiest, Butzel, Edward M. Sharpe, and Toy, JJ., concurred. Potter, J., took no part in this decision.

* See Michigan Const. 1908, art. 10, § 3.—Reporter.