MANUFACTURERS NATIONAL BANK OF DETROIT *v*. CITY
OF DETROIT.

1. TAXATION—BANK ASSESSMENTS.

It must be assumed that members and employees of the board
of assessors in charge of bank assessments are reasonably
familiar with such accounts.

2. SAME—BOARD OF REVIEW—QUASI-JUDICIAL ACTION.

The board of review of tax assessments, in making a determina-
tion of a tax, acts in a *quasi*-judicial capacity and, while it
is an administrative body, it cannot make an arbitrary ruling
not warranted by the uncontroverted facts presented.

3. SAME—NATIONAL BANK STOCK—ASSESSMENT—DEDUCTIONS FOR
INVESTMENT OF CAPITAL, SURPLUS AND UNDIVIDED PROFITS IN
TAX-FREE SECURITIES.

Assessment of capital stock of a national bank upon a basis
other than one in which deduction was made of investment
of capital, surplus and undivided profits in tax-free govern-
ment securities before allocation of valuation for assessment
purposes to each share of stock was erroneous where amount
of such investment could have been ascertained with reason-
able certainty (1 Comp. Laws 1929, § 3396, subd. 8, as amended
by Act No. 94, Pub. Acts 1931).

4. SAME—NATIONAL BANK STOCK—ASSESSMENT—INVESTMENT IN
STOCK OF SAFE DEPOSIT COMPANY—DEDUCTIONS.

National bank's investment in stock of safe-deposit company
organized by bank for purpose of having a safe-deposit busi-
ness operated in or adjacent to its banking offices was, where
amount was ascertainable with reasonable certainty, a proper
deduction to be made from capital before making tax assess-
ment on shares of stock of national bank (U. S. Rev. Stat.
§ 5136, subd. 7, as amended by 48 Stat. at L. 184, 185).

Appeal from Wayne; Chenot (James E.), J.  Sub-
mitted October 13, 1939.  (Docket No. 122, Calendar
No. 40,748.)  Decided December 20, 1939.

Assumpsit by Manufacturers National Bank of Detroit against City of Detroit and Albert E. Cobo, City Treasurer, to recover sums paid under protest as a capital stock tax. Judgment for plaintiff. Defendants appeal. Affirmed.

*Bodman, Longley, Bogle, Middleton & Farley,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *John H. Witherspoon,* Assistant Corporation Counsel, for defendants.

Sharpe, J. Plaintiff bank was organized in 1933 as a national banking association with the sum of $5,250,000 paid in by its shareholders as capital, surplus and undivided profits. It received its certificate of authority to commence business from the comptroller of the currency on July 28, 1933. On that day its entire capital was on deposit with the Detroit branch of the Federal Reserve Bank of Chicago. On the same day its board of directors adopted a resolution directing its president: "to immediately invest the capital, surplus and undivided profits * * * in United States Government securities, which investment is to be made before commencing its banking business so as to prevent these funds from being commingled with others."

The bank did not have any debt, deposits or obligations of any kind until after it began business on August 10, 1933. On August 2, 1933, the bank purchased $5,000,000 par value United States treasury bills dated May 24, 1933, and maturing August 23, 1933, for which it paid out of its original capital money the sum of $4,999,270.85. On the day these obligations became due they were collected by the Union Trust Company of Pittsburgh and the pro-

ceeds ($5,000,000) were deposited in a new account with the trust company of Pittsburgh and known as the "Manufacturers National Bank, Detroit, Michigan, capital stock fund account," such proceeds not having been previously credited to any other account of said bank. Thereafter the bank invested and reinvested this earmarked portion of its capital as a separate and distinct fund known as its capital fund account.

On March 15, 1934, the plaintiff bank purchased 995 shares of an authorized 1,000 shares of stock of Wayne Safe Deposit Company. The bank had caused this safe-deposit company to be organized for the purpose of carrying on a safe-deposit business. Plaintiff bank paid $99,500 for the above shares. The investment in these shares was made in accordance with U. S. Rev. Stat. § 5136, subd. 7, as amended by 48 Stat. at L. 184, 185 (see 12 USCA, § 24), which permits a national bank to invest not to exceed 15 per cent. of the capital stock of the association actually paid in and unimpaired and 15 per cent. of its unimpaired surplus in a safe-deposit company.

Pursuant to statute, plaintiff furnished the city of Detroit board of assessors with a tax return or statement of conditions as of March 31, 1937, for the purpose of computing the taxable cash value of its shares of stock. This statement of conditions claimed that six specific investments in securities should be deducted in full. Two of these investments are here in dispute. The return stated that:

"1. (As to $4,825,000 United States government obligations) * * * is directly traceable to and represents the investment and reinvestment of $5,000,000 of the capital, surplus and undivided profits of The Manufacturers National Bank of Detroit. This $5,000,000 was, before the bank began the banking

business, segregated from its remaining capital, surplus and undivided profits and invested in United States government securities, and, though invested and re-invested, has been kept separate from and not commingled with any of the other assets of this bank.

"2. (As to $99,500 Wayne Safe Deposit Company stock) * * * is made by law an investment of capital, surplus and undivided profits.

" (See 12 USCA, §§ 282, 287 and Rev. Stat. § 5136.)

"For the foregoing reasons each of said credits should be deducted in full in computing the assessed value per share."

The return also stated:

"These facts are corroborated by the books and records of this bank, which are open to examination by your board or any representative thereof at your convenience."

The board of assessors assessed the stock in plaintiff's bank as follows: From the total invested capital, the valuation of the real estate and Federal reserve stock was deducted in full leaving a balance of $6,429,926. The proportion of invested capital to capital and deposits was 5.0479 per centum. The total exempt securities, including the investment of $4,825,000 and the $99,500 in the Wayne Safe Deposit Company stock, was then multiplied by the percentage of 5.0479 and the result deducted from the balance of the total invested capital, leaving a remainder which, when divided by the 60,000 shares, arrived at a per share value of $79.69. This assessed value was upheld by the local board of review and by the State tax commission upon appeal.

It appears that if the assessment had been made in accordance with plaintiff's statement of conditions filed with the board of assessors, the per share assessed value of plaintiff's capital stock would have

been $19.77 per share. It also appears that plaintiff bank offered the board of assessors full opportunity to verify the facts by examination of any of the bank records. Plaintiff bank on behalf of its shareholders paid under protest the entire tax as assessed and immediately thereafter filed a claim with the common council of the city of Detroit for a refund of that portion of the tax which plaintiff claims was unlawful. The city council denied the claim and the present suit was instituted.

The trial court found that:

"Mr. Burns, the secretary of the board of assessors of the city of Detroit, who made the assessment complained of, testified in behalf of the defendant that the assessment in this case was made upon the theory that the assessing officer was unable to ascertain with reasonable certainty that the investment in these government securities represented the investment of capital moneys, and, therefore, the proportion rule stated in 1 Comp. Laws 1929, § 3396, subd. 8, as amended by Act No. 94, Pub. Acts 1931, was used.

"The record in this case makes any such position untenable, and in the opinion of the court it could have been readily determined with reasonable certainty that this investment of $4,825,000 in tax-free government securities represented an investment of capital, surplus and undivided profits. The investment was made from funds which had always been kept clearly earmarked, and was readily traceable with reasonable certainty to the $5,250,000 which was paid in as capital money on July 28, 1933, the day the bank was organized. The board of assessors was therefore in error in making the assessment upon the proportion rule theory.

"The investment of $99,500 in the capital stock of Wayne Safe Deposit Company, a Michigan corporation, was made pursuant to U. S. Rev. Stat. § 5136, which provides 'that in carrying on the busi-

ness commonly known as the safe-deposit business the association shall not invest in the capital stock of a corporation organized under the law of any State to conduct a safe-deposit business in an amount in excess of 15 per centum of the capital stock of the association actually paid in and unimpaired and 15 per centum of its unimpaired surplus.'

"This investment was made in conformity with the provisions of a Federal statute from the capital and surplus of the plaintiff bank. Such an investment represents a part of the business of the bank, and is an investment of capital, surplus and undivided profits, and not the consideration of debts and liabilities within the meaning of Act No. 94, Pub. Acts of 1931. The board of assessors was in error in its failure to make such a determination. The investment is exempt from taxation under the above-mentioned authority."

And ordered that a judgment be entered in favor of plaintiff in the amount of $84,507.45.

Defendants appeal and contend that the burden is upon plaintiff to prove that the assessing officers, with the approval of the reviewing bodies involved, exercised a discretion fraudulent in the eyes of the law, and cite *Copper Range Co.* v. *Adams Township,* 208 Mich 209; *S. S. Kresge Co.* v. *City of Detroit,* 276 Mich. 565 (107 A. L. R. 1258), as authority for their claim.

In our opinion decision in this case involves an interpretation of 1 Comp. Laws 1929, § 3396, subd. 8, as amended by Act No. 94, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 3396, Stat. Ann. § 7.8), which provides:

"All shares in banks and trust companies which shall be doing business in this State under whatsoever authority organized shall be assessed and taxed as herein provided. The said shares shall be assessed at the cash value of each after deducting the

per share portion of (a) the assessed value of all real property owned or leased by such corporation and of any building erected upon leased lands upon which leased lands such corporation shall have obligated itself to pay any and all taxes, and also the amount actually invested in the capital stock owned by such corporation of any corporation organized solely for the purpose of building or owning the business premises occupied by such corporation, and (b) the value of all securities belonging to said corporation which represent the investment of capital, surplus or undivided profits and not of the proceeds or consideration of debts and liabilities of said corporation and are exempt from general taxation by virtue of any law of this State or of the United States. To the extent the assessing officer shall be unable otherwise to determine with reasonable certainty, the amount of such exempt securities which represent the investment of the capital, surplus and undivided profits of the corporation shall be deemed to be that proportion thereof which the capital, surplus and undivided profits of said corporation bear to its capital, surplus, undivided profits and deposits excluding from all elements of such calculation an amount equivalent to such exempt securities of which the source of the funds invested therein shall have been otherwise determined. Deposits as used herein shall mean all moneys or credits taken or obtained from customers or others for use in the business of said corporation and from which the relation of debtor and creditor has arisen. The amount of such securities shall be determined by taking the monthly average thereof during the preceding calendar year. The cash value of each share shall on the absence of other satisfactory evidence be deemed to be the amount determined by adding together the capital, surplus and undivided profits, deducting therefrom the aggregate for all shares of the deductions aforesaid and dividing the result by the number of shares into which the capital

stock is divided. All assessments of shares in banks and trust companies for the year nineteen hundred thirty-one and subsequent years shall be made under the provisions of this act and if any assessment of such shares for the year nineteen hundred thirty-one shall have been made contrary to the provisions of this act the same shall be corrected to comply herewith and if necessary the board of review of any township, city or village shall reconvene for such purpose and shall re-assess such shares according to the provisions hereof.''

It is the claim of the plaintiff that no funds were ever deposited in the capital fund account in Pittsburgh or New York which were not directly traceable to the investment and reinvestment of the proceeds of the payment of the $5,000,000 treasury bills purchased August 2, 1933, out of the original capital moneys; and that it was possible for the assessing officers to determine with reasonable certainty that the investment of $4,825,000 in tax-free government securities represented an investment of capital, surplus and undivided profits.

The trial court held that it could have been readily determined with reasonable certainty that the investment of $4,825,000 in tax-free government securities represented an investment of capital, surplus and undivided profits. We are in accord with the finding of the trial court. It must be assumed that members and employees of the board of assessors in charge of bank assessments are reasonably familiar with such accounts. It appears that Mr. Burns, the person delegated by the board of assessors to determine the facts, was familiar with the facts as this controversy had continued since the bank was organized. He was present in court when the 1934 assessment was in controversy. He attended the hearings before the board of review and the State tax commission where the assessments for

each of the years since the bank was organized were in controversy. He had the bank records for information and, had he so desired, he could have verified much of this information by documents emanating from the Bankers Trust Company of New York and the Union Trust Company of Pittsburgh. There is nothing in the record to indicate that the bank failed to give Mr. Burns every assistance in order that he might make a determination of the facts for the board of assessors.

In *National Bank of Detroit* v. *City of Detroit,* 272 Mich. 610, we said:

"In making a determination of the tax, the board acts in a *quasi*-judicial capacity. While it is an administrative board, it must weigh the facts as presented and cannot make an arbitrary ruling not warranted by the uncontroverted facts presented. See *In re Appeal of Hoskins Manfg. Co.,* 270 Mich. 592."

Records presented to the assessing officers were such that they could determine with reasonable certainty that the $4,825,000 government securities in the capital fund account represented the capital moneys set aside and invested in government notes prior to the opening of the bank.

Plaintiff urges that the investment of $99,500 in the capital stock of the Wayne Safe Deposit Company, a Michigan corporation, should have been deducted in full by the assessing officers as it was made out of capital moneys.

U. S. Rev. Stat. § 5136, subd. 7, as amended by 48 Stat. at L. 184, 185 (see 12 USCA, § 24), permits a national bank to invest in stock of a safe-deposit company:

"*Provided,* That in carrying on the business commonly known as the safe-deposit business the association shall not invest in the capital stock of a cor-

poration organized under the law of any State to conduct a safe-deposit business in an amount in excess of 15 per centum of the capital stock of the association actually paid in and unimpaired and 15 per centum of its unimpaired surplus.''

On March 15, 1934, plaintiff bank was instrumental in organizing the Wayne Safe Deposit Company and purchased 995 shares of an authorized 1,000 shares of its stock. Its purpose was to have a safe-deposit business operated in or adjacent to its banking offices. It was lawfully instituted and the assessing officer could with reasonable certainty determine that moneys invested therein were derived from the capital stock of plaintiff bank.

The judgment of the trial court is in accordance with the provisions of 1 Comp. Laws 1929, § 3396, as amended by Act No. 94, Pub. Acts 1931, and is affirmed. Plaintiff may recover costs.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.