Appeal of Sander JOHNSON from the Decision of the Board of County Commissioners of Grand Forks County, North Dakota, Denying Application for Abatement of Real Estate Taxes.

Civ. No. 8567.

Supreme Court of North Dakota.

Jan. 15, 1970.

Caldis & Arneson, Grand Forks, for appellant, City of Grand Forks.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for respondent, Sander Johnson.

John A. Alphson, State's Atty., Grand Forks, for Board of County Commissioners of Grand Forks County.

Joseph R. Maichel, Asst. Atty. Gen., Bismarck, for State Tax Commissioner.

ERICKSTAD, Judge.

The City of Grand Forks appeals from a judgment of the District Court of Grand Forks County, the Honorable A. C. Bakken, Judge, dated December 30, 1968, which refunded $240.90 of the real estate taxes paid by Mr. Sander Johnson for the year 1965. The judgment also included $37.11 in interest and $145.80 in costs and disbursements.

This case arises from an application made by Mr. Johnson on April 14, 1966, entitled "Application for Abatement and Settlement of Taxes," in which it was asserted that taxes which he had paid for 1965 on Lot 16 in Block 31 of the Original Townsite of Grand Forks were excessive, and in which he demanded a refund. On August 16, 1966, the governing board of the City of Grand Forks recommended that the application be denied, and on August 26, 1966, the Board of County Commissioners of Grand Forks County denied it. On September 19, 1966, Mr. Johnson appealed to the District Court from the decision of the Board of County Commissioners. Thereafter the County moved that the City of Grand Forks be made a party to the action, asserting that the motion was made under N.D.R.Civ.P. 19(b) so that complete relief could be accorded the parties. This motion was denied by Judge Bakken on January 16, 1968. On May 17, 1968, the City moved to intervene, asserting that under N.D.R. Civ.P. 24(a) it had a right to be made a party to the action. By order dated May 29, 1968, the Honorable Harold M. Hager, District Judge, granted the City permission to intervene.

Simultaneously with its motion to intervene, the City moved to dismiss the appeal on the ground that the court lacked jurisdiction, asserting that no justiciable controversy had been presented to the court. By order dated June 13, 1968, Judge Bakken denied the motion to dismiss. On November 6, 1968, after due hearing upon the appeal from the decision of the Board of County Commissioners, Judge Bakken entered his findings of fact, conclusions of law, and

order for judgment. The findings most pertinent to this appeal are contained in paragraphs 7 through 10 and read as follows:

### 7.

FOUND that the above entitled property was taxed by the County of Grand Forks for the calendar year 1965, and that for said year the values as ascribed to said land by the city assessor of the City of Grand Forks, which form the basis for the assessment of the tax for said year, were as follows:

| | |
|---|---|
| Appraised value | $86,850.00 |
| Assessed value (27% of appraised value) | 23,460.00 |
| Taxable value (50% of assessed value) | 11,730.00 |

### 8.

FOUND that the appraised value of $86,850.00 on said land was not at said time and is not the full and true value of said property as provided by law, specifically Section 57–02–27 of the North Dakota Century Code.

### 9.

FOUND that the true and full value in money of the above described property, on April 1, 1965, for which taxes for the year 1965 should have been levied are as follows:

| | |
|---|---|
| Appraised value | $76,910.00 |
| Assessed value (27% of appraised value) | 20,765.70 |
| Taxable value (50% of assessed value) | 10,382.85 |

### 10.

FOUND that before the tax year of 1965 there was assessed against the above described property as real estate taxed, the sum of $2,097.56, plus special assessments of $408.94, or a total tax and assessment of $2,506.50.

On those findings the court concluded that the proper tax upon the property for the year 1965 was $1,856.66, and thus that Mr. Johnson was entitled to a refund of $240.90. It is from the judgment entered on the aforesaid findings of fact, conclusions of law, and order for judgment that the City now appeals.

Although demanding a trial de novo, the City has asserted five specifications of error. In its brief, and orally before this court, it has grouped the specifications for purposes of argument. We shall discuss them in the manner and in the order in which they have been briefed and argued to us.

Specifications 1 and 2 are grouped together. They read:

1. The court erred in its denial of intervening party respondent's Motion to Dismiss, said motion being made on jurisdictional grounds and the lack of presentation of a justiciable controversy, and said motion being denied by that Order of the court dated June 13, 1968.

2. The court erred in its finding that procedural steps taken by Sander John-

son in the prosecution of his appeal to the District Court were in accordance with the law and that the court had jurisdiction of the subject matter.

N.D.C.C. § 11–11–41 provides for the time within which an appeal must be taken from a decision of a board of county commissioners, for the notice which must be given to a member of the board of county commissioners and to the State Tax Commissioner, and for a transcript of the proceedings:

> 11–11–41. Time for appeal—Notice—Transcript of proceedings.—An appeal from a decision of the board of county commissioners must be taken within thirty days after the decision of the board by serving a written notice of appeal upon one member of the board. If the decision from which an appeal is taken relates to tax refunds, tax abatements, or other matters relating to taxation, a notice of appeal also shall be served by registered or certified mail upon the state tax commissioner. The county auditor, upon the filing of the undertaking, shall make out a complete transcript of the proceedings of the board relating to the matter in controversy, and shall deliver the same to the clerk of the district court.

North Dakota Century Code.

The City does not contend that the provisions of § 11–11–41 have not been complied with; however, it does assert that the requirements of § 11–11–42 have not been met. That section reads:

> 11–11–42. When appeal filed—When tried.—An appeal from a decision of a board of county commissioners shall be filed on or before the first day of the term of the district court following the taking of the appeal, and the cause shall stand for trial at such term.

North Dakota Century Code.

It is apparently the City's position that, although Mr. Johnson appealed from the decision of the Board of County Commissioners within thirty days after its rendition, he did not file his notice of appeal on or before the first day of the term of the District Court following the taking of the appeal.

On the record before us we cannot determine what date may have been the first day of the term in 1966 following the Board's decision, but we do note that the original notice of appeal carries the stamp of the Clerk of the District Court of Grand Forks County, stating that it was filed in that office on September 20, 1966. Assuming, for the sake of argument, that September 20 may have been after the first day of the term of the district court following the date of the decision of the Board of County Commissioners, we are nevertheless of the opinion that the appeal was not defective, it having been served and filed within thirty days of that decision. Any other construction would read confusion into the statutes. [We refer readers interested in applications for abatement or refund after July 1, 1969, to § 1, ch. 491 of the 1969 session laws, or N.D.C.C. § 57–23–08.]

The second assertion in support of Specifications 1 and 2 is that because Mr. Johnson did not commence his action by the service of a summons, he has failed to comply with N.D.R.Civ.P. 3 and, in light of Rule 81(a, b), the District Court had no jurisdiction to entertain the case.

Rules 3 and 81(a, b) follow:

### RULE 3. COMMENCEMENT OF ACTION

A civil action is commenced by the service of a summons.

### RULE 81. APPLICABILITY; IN GENERAL

(a) Special Statutory Proceedings. The statutory proceedings listed in Table A are excepted from these rules insofar as they are inconsistent or in conflict with

the procedure and practice provided by these rules.

(b) Appeals to District Courts. These rules do not supersede the provisions of statutes relating to appeals to or review by the district courts, but shall govern procedure and practice relating thereto insofar as these rules are not inconsistent with such statutes.

North Dakota Rules of Civil Procedure.

Inasmuch as Rule 81(b) specifically provides that the rules do not supersede the provisions of the statutes relating to appeals to or review by the district courts, we hold that the appeal from the decision of the Board of County Commissioners was sufficient, it being our view that Rule 3 is inconsistent with the provisions of the statutes relative to appeals from a decision of a board of county commissioners.

■ The City also attacks the notice of appeal as being indefinite as to whom the appeal is taken, but, although the notice of appeal is not a model for future use, we believe that all parties clearly understood to whom the appeal was taken.

■ The City contends further that, as the appeal is not from one court to a higher court but from a decision of a governing body to a court, a complaint should have been served, setting forth Mr. Johnson's claim for relief in the form of facts, so that the issues would have been defined. It is our view, however, that the filing of the application for abatement of the taxes and the action taken in response thereto by the governing board of the City and by the Board of County Commissioners and the transcript of the proceedings of the Board, apprised the District Court of the issues to be determined. Accordingly, we find that the case is before us on its merits, and we shall now attempt to answer the issues raised by the City relative to the merits.

The City has also grouped its specifications of error numbered 3 and 4 together. They follow:

3. The court erred in finding that the appraised value of $86,850.00 on the property in issue was not the full and true value of said property as provided by law, and that the appraised value should have been in the amount of $76,910.00 with corresponding and proportionate effect on assessed and taxable values.

4. The court erred in adjudging, determining and decreeing that Appellant Sander Johnson have Judgment in the sum of $240.90 together with interest thereon, plus costs and disbursements taxed and allowed.

Under those specifications the City argues that the District Court—in substituting its judgment for that of the governing board of the City, which assessed the property, and that of the Board of County Commissioners, which refused to reduce the assessment—exceeded its powers under the statutes, as well as under the Constitution. It asserts that valuation of property for tax purposes is a legislative function and that judicial review is limited. It urges that the rule quoted in a 1941 opinion of this court in an appeal by the Northern Pacific Railway Company from assessments made by the State Board of Equalization applies in this case:

The rule supported by the overwhelming weight of authority is that in absence of specific authority courts have no power to review, or change, the valuation of property fixed by assessing officers, and that a court of general jurisdiction has no 'inherent power to conduct an inquiry where relief is sought against taxes solely on the ground that the assessing officers were in error in their valuation of the property assessed. Maish v. Arizona, [164 U.S. 599, 17 S.Ct. 193, 41 L.Ed. 567]; Great Northern R. Co. v. Weeks, [297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532]; Nashville, C. & St. L. Ry. Co. v. Browning, [310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254]; 11 Ency. U. S. Supreme Ct. Rpts., pp. 517, 518; 61 C.J. 855 * * *

Northern Pac. Ry. v. State, 71 N.D. 93, 299 N.W. 696, 700 (1941).

Mr. Johnson concedes that the City Assessor used the same methods in appraising all of the commercial properties in the city of Grand Forks but contends that this is immaterial and that his appraisal, as confirmed by the City and the County, should be set aside because it failed to represent the true and full value in money of the property. He refers us to N.D.C.C. § 57–02–01(4), defining true and full value as follows:

"True and full value" means the usual selling price at the place where the property to which the term is applied shall be at the time of the assessment, that being the price at which it could be obtained at private sale, and not at a forced public auction sale;

North Dakota Century Code.

As for the City's argument that the valuation is not subject to judicial review, he refers us to N.D.C.C. § 57–23–10, which reads:

57–23–10. Appeal.—An appeal may be taken to the district court from the decision of the board of county commissioners abating, refunding, or compromising any tax, or refusing so to do, in the manner provided for other appeals from decisions of the board of county commissioners.

North Dakota Century Code.

He also concedes that valuations for tax purposes are necessarily approximations but asserts that approximations are "inequitable" or "unjust" when, on review, the court, exercising its judgment, determines the approximations to be different from the approximations arrived at by the City Assessor, the governing board of the City, and the Board of County Commissioners.

Pertinent to that assertion is N.D.C.C. § 57–23–03, which reads in part:

57–23–03. Abatement of invalid, inequitable, or excessive taxes.—When the board of county commissioners is satisfied beyond a doubt that the assessment of real or personal property described in an application for abatement is invalid, inequitable, or unjust, the board, if application is filed on or before the first day of November in the year in which such taxes become delinquent, may abate any part thereof in excess of a just, fair, and equitable assessment if such application for correction complies with requirements of this chapter. Any person aggrieved by any decision of said board of county commissioners may appeal to the district court in the manner provided by law.

\*   \*   \*   \*   \*   \*

North Dakota Century Code.

Also pertinent is § 57–23–05, as it was in effect in 1965:

57–23–05. Application for Abatement or Refund—Who May Make.—An application for an abatement or refund shall be in writing and shall be filed in duplicate with the county auditor. It shall state the ground relied upon for such abatement or refund, give the postoffice address of the applicant, and shall be verified. The county auditor shall note the date of filing and shall file the same. He shall present the application to the board of county commissioners at its next regular meeting.

Any person having any estate, right, title or interest in or lien upon any real or personal property who claims that the assessment made or the tax levied against the same is excessive or illegal, in whole or in part, shall be entitled to make an application for abatement, refund, or compromise, as the case may be, and have such application granted if the facts upon which the application is based bring it within the provisions of this chapter for abatement, refund or compromise.

Laws of North Dakota 1961, ch. 350, § 1.

He asserts that the clear weight of the evidence indicates that the property was

over-assessed by approximately $10,000 for the tax year in question. Mr. Johnson cites no authority other than the statutes herein set forth. Although this court has apparently never been faced with this issue before, other courts have been confronted with it and have for the most part taken a view contrary to Mr. Johnson's.

The rule stated to have been supported by the overwhelming weight of authority in Northern Pacific Railway v. State, *supra*, (citing Corpus Juris) has now been stated in Corpus Juris Secundum as follows:

> As a general rule, unless authorized to do so by statute, the courts have no jurisdiction to go into the matter of an excessive assessment and change the valuation fixed by the proper authorities, in the absence of fraud, mistake, or illegality. Where the assessing officer exercises an honest judgment, a court cannot substitute its judgment as to valuation for that of the officer, and an assessed valuation of property cannot be impeached by judicial action merely because the assessing body and the court differ in opinion as to the valuation. * * * (footnotes omitted)

84 C.J.S. Taxation § 562, at 1107–1108 (1954).

A number of cases are cited in the footnote to the proposition that courts have no jurisdiction to go into the matter of an excessive assessment and change the valuation fixed by the proper authorities, in the absence of fraud, mistake, or illegality. We shall discuss a few of the more recent opinions cited.

In a 1956 opinion, the Supreme Court of Michigan refused to set aside an assessment which had been established by a township and affirmed by the state tax commission, saying:

> Nothing would be gained by encumbering the opinion with details of the figures put into the record. They do not establish that plaintiff's property was overvalued by comparison with the valuations placed on other property in the township, which, if true, would have resulted in plaintiff paying more than its just proportion of taxes. The evidence falls short of establishing plaintiff's claim that the defendant's assessing officer acted arbitrarily, capriciously, or without regard to the true cash value of plaintiff's property. The evaluation of property such as that owned by plaintiff is not an exact science. Plaintiff did not meet the burden of showing that its property was not assessed for taxation as nearly as possible on an equal basis with other property in the township. * * *

Naph-Sol Refining Co. v. Twp. of Muskegon, 346 Mich. 16, 77 N.W.2d 255, 257 (1956).

Before so concluding the court quoted from one of its earlier cases as follows:

> In S. S. Kresge Co. v. City of Detroit, 276 Mich. 565, 268 N.W. 740, 107 A.L.R. 1258, this Court held (syllabi):
>
> "Assessments of properties for purposes of taxation will not be disturbed by courts unless they are so at variance with undisputed facts as to be a fraud upon the taxpayer, notwithstanding courts might disagree with conclusions of assessing officers in the exercise of their discretionary power and adopt a different figure upon the same evidence.
>
> * * * * * *
>
> "Courts cannot substitute their judgment as to the valuation of property for the judgment of duly constituted tax authorities unless assessments are shown clearly to transgress reasonable limits, mere overvaluation or error of judgment not amounting to fraud not being enough to warrant court interference."

Naph-Sol Refining Co. v. Twp. of Muskegon, *supra*, 257.

The Supreme Court of Illinois in 1966, saying that it had consistently held that the

taxation of property is a legislative rather than a judicial function, held that a disparity between the assessment of a certain tract of land by the board of review and the opinion of the taxpayer's appraiser of approximately twenty-five per cent did not justify interference by the court. It said:

> The court must presume, in the absence of contrary evidence, that the assessing officers performed their duty, and the court will not set aside an assessment merely because of a difference of opinion as to value. (citations omitted)

People ex rel. Nordlund v. S. B. A. Co., 34 Ill.2d 373, 215 N.E.2d 233, 235 (1966).

In conclusion the court said:

> [I]t is not the function of the judiciary to act as a super board of review, but only to protect the public from fraudulent discriminatory taxation and clear abuse of administrative authority. We can only say that the record in this case, showing no discrimination or failure to honestly perform administrative functions, does not justify judicial interference with the proper assessing authorities.

People ex rel. Nordlund v. S. B. A. Co., *supra*, 236.

See also People ex rel. Joseph v. Schoenborn, 41 Ill.2d 302, 242 N.E.2d 147 (1968).

The Appellate Division of the Superior Court of New Jersey in 1957 in effect held that taxpayers were not entitled to anything more than the application of a commonly applied assessment ratio to the true value of the real estate for taxation and were not entitled to a valuation based on their expert's private opinion of such value. Jat Co., Inc. v. Division of Tax Appeals, 47 N.J.Super. 571, 136 A.2d 666.

These opinions are consistent with the position taken by this court very recently when, in reviewing the assessments of a special assessment commission as confirmed by a city commission, we said it was not the province of the court to substitute its judgment for that of the commission but merely to determine whether the commission was within its jurisdiction; whether it was not mistaken as to the applicable law; whether it acted arbitrarily, oppressively, or unreasonably; and whether there was substantial evidence to support or justify its determination. Soo Line R. R. v. City of Wilton, Syllabus 5, No. 8547, 172 N.W.2d 74 (N.D. 1969).

With this perspective as to our scope of review, let us briefly analyze the facts in this case to determine whether the valuation placed upon the property by the assessing authority should stand.

Mr. Robert Simons, the City Assessor for Grand Forks from February 1, 1963, to the date of the trial, October 10, 1968, who was previously employed in assessment work by the City of Bismarck from June 15, 1955, to February 1, 1963, was first called for cross-examination as an adverse witness by Mr. Johnson. He explained that it was the duty of his office to appraise property, that the assessed value of the property was arrived at by taking 27% of the appraised value, and that the tax was determined by dividing that figure by two and then multiplying by the mill levy.

He said that in 1965 the appraised value of the land in question, apart from the building thereon, was $22,500, and that the building was appraised at $64,350, for a total value of the property of $86,850.

On direct examination and later on re-cross-examination Mr. Simons explained that the value of the building on the land for the year 1965 was established through a determination of the reproduction cost less depreciation. He said that the building situated on this property, as well as all other commercial buildings in the City of Grand Forks, was appraised in 1956 by the L. E. Thomas Company of Cleveland, Ohio, a nationally recognized appraisal firm, and that his office arrived at the appraised value of the building on the property in question for the year 1965, as well as the value of all other commercial buildings for the year 1965, by merely computing what he called

an adjusted straight-line depreciation of the valuations placed upon the various buildings by the L. E. Thomas Company in 1956.

He explained that a reappraisal plan was developed for the city shortly after his arrival in Grand Forks as City Assessor and that the plan first called'for a reappraisal of the land, then reappraisal of residential buildings, and finally reappraisal of the commercial buildings and land, all of which took years to accomplish.

He said the land in question was reappraised in 1965 on a market data approach, which he otherwise described as a comparable sales approach. The comparable sales were at $3.42 and $3.63 per square foot. He said that on the basis of those sales, his office estimated the value of the Johnson land for the year 1965 to be $22,500, or $3.21 per square foot. Adding the value of the land, $22,500, to the value of the improvements, $64,350, resulted in an appraised value of $86,850. The $64,350 value for the building was arrived at by taking the cost of reproduction, $85,800, determined by the L. E. Thomas Company, and subtracting therefrom depreciation for the intervening years of $21,450. No functional depreciation and no economic depreciation were found to exist, all depreciation being physical.

Although the tax year in question is 1965, the court permitted the cross-examination of Mr. Simons concerning valuations placed upon the land and building for the year 1967. Mr. Simons stated that his office gathered data in August 1966 for the value placed on the building as of April 1, 1967, that being $46,110, and that in February 1967 his office gathered data for a new valuation of the land for a value ascribed it on April 1, 1967, the new figure being $30,000. The total valuation of the property for 1967 thus determined by the City Assessor's office was $76,110.

As the trial court did not provide us with a memorandum decision but merely executed its findings of fact, conclusions of law, and order for judgment upon which the judgment appealed from was entered, we have no way of knowing how the trial court arrived at its valuation of the property, but it is interesting to note that it determined the value to be $76,910 for the year 1965, which is $1,910 in excess of the valuation placed on the property in 1964 by an appraiser employed by Mr. Johnson and is $800 more than the value attributed to the property by the City Assessor in 1967.

Mr. Arthur A. Hagen, who testified through deposition, stated that he appraised the property at Mr. Johnson's request on June 29, 1964, at $75,000. He testified that he had been engaged in the appraisal of real estate for fifteen years and had been in the real estate business, employed by the E. J. Lander Company, for twenty-five or thirty years. He said he had attended seminars held by the American Institute of Real Estate Appraisers. These seminars were similar to ones which Mr. Simons testified he had attended.

Mr. Hagen asserted that he took into consideration economic depreciation, inasmuch as the building was on a one-way street and as it was built for a wholesale house dealing in heavy equipment rather than for a store or office building. He said he compared a building nearby that he had appraised with this building, even though the other building had not been sold. He conceded that there was a marked increase in the cost of labor and materials in the ten years prior to 1964. He testified that he estimated the reproduction cost at $85,800, and the life of the building at 100 years. He said he took depreciation at 1 per cent per year for 35 years for a total of $35,000 in physical depreciation, leaving $50,800. From that, he said, he subtracted $5,800 for economic depreciation, leaving $45,000 as the value of the building. Ascribing $600 per front foot to the land, he arrived at a figure of $30,000 for the land. Combining the $45,000 for the building and $30,000 for the land, he arrived at a total appraised value of $75,-000.

Although Mr. Hagen testified that he used a reproduction cost of $85,800, and his written appraisal, which was received as an exhibit, was also to that effect, he must have used a reproduction cost of $100,000, or else a greater percentage of depreciation than 1 per cent per year, to arrive at the $50,800 figure. In any case, his testimony is unclear.

Mr. Harold A. Boe was called as a witness for Mr. Johnson. He testified that his firm, the John C. Boe Company, a real estate and insurance business, was established in 1905 and that he had been with it thirty-odd years. He stated that the property in this case had been listed with him since 1967 and that he had received no bona fide offers to buy it. He estimated that it had a market value in 1965 of $65,000. He had attended no special training courses in land appraisal but had appraised property over a period of years when states were involved. He did not attempt to "cost out" the reproduction of the building. He said that he did not consider the income of the property and capitalize it to arrive at a market value, nor did he break down the appraisal into land and building values.

Mr. Johnson also called Mr. H. G. Ruemmele as a witness. He testified that he was an attorney at law and in the abstract business. He stated that between 1964 and 1966 he offered to buy the property for $75,000, but that this offer was rejected by Mr. Johnson, who offered to sell it to him for $77,000. He said he later decided against buying the building because the 1½-foot thickness of the concrete floor would have made rewiring and remodeling too expensive.

■ Reviewing the evidence referred to herein and evidence contained in the transcript not related herein we find that there is substantial evidence to support the appraisal made by the assessing authorities and no evidence of any discrimination, the same methods of appraisal having been used for all the commercial property.

■ Adopting the rule of law applied by the great majority of the courts of this country, that under such circumstances it is not for the court to substitute its judgment for that of the lawfully designated taxing authorities, we find it necessary to reverse the judgment of the trial court and to remand the case, with instructions to the trial court to affirm the decision of the Board of County Commissioners.

■ We do not think that the fact that the City in 1967—two years after the tax year in question—when it had completed its reappraisal of the commercial property, appraised the property at a considerably lower figure than it had appraised it only two years earlier, can be taken as proof of any arbitrary or inequitable action on the part of the City. If we were to hold that the lower appraisal was such proof, we would be discouraging taxing authorities from making conscientious efforts to thoroughly reappraise taxable property on a regular basis, lest the reappraisal be taken to indicate an error in earlier appraisals.

Having taken this view, we find it unnecessary to consider the City's fifth specification of error further.

Accordingly, the judgment is reversed, and the case is remanded, with instructions to the trial court to take action consistent with this opinion.

TEIGEN, C. J., and STRUTZ, KNUDSON and PAULSON, JJ., concur.